# CIRCUIT COURT OF ALBEMARLE COUNTY

Rector and Visitors of the
University of Virginia,
t/a The University of
Virginia Medical Center

v.

Roger Mitchell,
Sheriff of Culpeper County

November 4, 1999

Case No. CL 99-7809

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court following a trial before the Court on Plaintiff's Warrant in Debt on September 27, 1999. The Court requested additional authority of Counsel before issuing a ruling. Being in receipt of Defendant's letter of September 30, 1999, and Plaintiff's letter of October 4, 1999, the Court now rules in favor of the Defendant.

*Facts*

Plaintiff University of Virginia Medical Center ("UVAMC") provided medical treatment for a urinary discharge suffered by John Willard, then an inmate at the Culpeper County Jail, on November 22, 1996, January 24, 1997, and March 7, 1997. Bills for services totaled $1,658.85, the amount for which UVAMC has sued Defendant Roger Mitchell, Sheriff of Culpeper County. The sheriff denies responsibility for the bill, having provided UVAMC with a document at the time Mr. Willard was delivered for treatment stating that Mr. Willard:

is currently incarcerated at the Culpeper County Jail and is responsible for any medical bills related to their treatment by your facility. The Culpeper County Jail assumes no financial responsibility for any medical bills related to their treatment by your facility.

Def. Ex. # 4.

UVAMC contends that the sheriff must retain financial responsibility for the medical care of jail inmates and cannot pass inmates off on a hospital obligated to serve "regardless of the patient's ability to pay." Pl. Letter to the Court of 10/4/99 at 2. The sheriff responds that his statutory duties were satisfied by the care given Mr. Willard by jail physicians at Culpeper Family Practice on August 14, 1996, September 16, 1996, and October 11, 1996, which concluded that no further treatment was necessary. Appointments were scheduled at UVAMC on Mr. Willard's insistence and with his agreement that he or his insurance would take full responsibility for his bills. Culpeper County Jail rules and regulations, signed by Mr. Willard upon incarceration on November 13, 1995, and again on April 24, 1996, provide that:

> Inmates shall be responsible for any and all medical services rendered by external medical/mental facilities (hospital, dental, lab work, x-rays, etc.), except those rendered by the jail physicians and dentists for which the $20.00 co-payment will apply.

Def. Ex. # 3.

UVAMC billed Mr. Willard's insurance for the services in question but found the insurance not to have been in effect at the time most services were rendered. During a previous incarceration at the Culpeper County Jail, from November 13, 1995, until January 4, 1996, Mr. Willard was treated at UVAMC on four occasions for a broken arm and a sore throat. Bills for these services were not directed to the sheriff.

*Discussion of Authority*

The fundamental principle that "an inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), is not controverted here. The question is who bears financial responsibility and at what point, if any, those needs may be considered to have been met. Theoretically, the possible answers include: (1) the prisoner or the prisoner's insurance; (2) the state, by virtue of custody or indigency; or (3) some combination of the two. Again in theory, if financial responsibility lay solely

with the prisoner, it would be up to the prisoner to determine how much medical care to seek (assuming the jail declines to interfere with that liberty). Alternatively, if the state were to assume the entire burden, it must either discover a limit to a prisoner's "needs" (and risk litigation by inmates who disagreed) or be exposed to potentially unending consumption. But if the state, after shouldering some initial responsibility, were at some point able to shift the burden back to the inmate, then the decision would again belong to the prisoner. The Court finds that it is this last path that Virginia has chosen to follow.

Virginia Code § 53.1-126 requires a sheriff to purchase for inmates all such "medicine as may be necessary." Thus, the General Assembly has eliminated the first of the theoretical options outlined above, that the prisoner alone consider the costs, and placed the burden, at least initially, on the state in the person of the sheriff. The phrase "as may be necessary," however, also implies a limit to the sheriff's responsibility. What happens when that limit is reached — whether the prisoner becomes the guarantor or is simply denied access to a second opinion or elective consumption — is not answered in the statute.

A willingness to permit cost-sharing, however, may be seen in Va. Code § 53.1-133.01. This section authorizes the Board of Corrections to develop a model plan and promulgate regulations under which a sheriff "may establish a medical treatment program for prisoners in which prisoners participate and pay towards a portion of the costs thereof." Although the Virginia Board of Corrections Model Plan, dated August 17, 1994, cites the widespread establishment of fee charging medical treatment programs, outlines procedures, and suggests possible fees, it does not address the specific situation giving rise to the issue at bar. See Def. Ex. # 1.

The primary concern of the Model Plan appears to be that participating jails' "written policy, procedure and practice shall provide that no inmate will be denied access to medical services based upon ability to pay." Id. at 4. Accordingly, Culpeper County Jail rules and regulations, signed by prisoners upon incarceration, state in bold face type:

Medical care will never be refused to any inmate. Those inmates who do not have money in their account will be seen by medical staff upon request, and a negative balance will be placed on their inmate account.

Def. Ex. # 3.

Following the lead of the General Assembly and Board of Corrections Model Plan, the sheriff in this case decided not to refuse medical care to Mr. Willard. Having determined through three examinations and treatments by jail physicians that the statutory requirement of "as may be necessary" had been met, however, the sheriff returned financial responsibility to Mr. Willard for a second opinion. Mr. Willard agreed and was transported to UVAMC.

At trial, UVAMC protested that such transfer by the sheriff was unfair since UVAMC is obligated to treat all who arrive on its doorstep, regardless of ability to pay. Recognizing and applauding indigent care as a noble mission, the Court is unconvinced of UVAMC's statutory obligation. The hospital has significant latitude in the services it chooses to provide. Even if UVAMC has a legal duty towards indigents, however, there is no evidence that the service rendered Mr. Willard stemmed from this obligation. Indeed, testimony at trial indicated that UVAMC accounting procedures specifically carve out inmates as not indigent.

UVAMC has adopted Guidelines for the Determination of Eligibility of Indigent and Medically Indigent Persons for Health Care Services at the State University Teaching Hospitals. See Pl. Letter to the Court of 10/4/99 enclosure. Under the guidelines, a person qualifies for treatment as indigent or medically indigent according to specific criteria. See *id.* Guideline methodology dictates that "the patient/guarantor will be screened at the time of admission or registration unless there are extenuating medical circumstances, in which case the patient will be interviewed at a more appropriate time." *Id.* at 8. Verification follows necessary proof of income for evaluation, although "parents [sic?]/guarantors may be considered for indigent care if after reasonable collection efforts, other indications of indigency exists [sic]." *Id.*

If UVAMC had determined that Mr. Willard was not indigent, it need not have treated him under its obligation to indigents. Here, it appears that UVAMC provided treatment to Mr. Willard as any fee paying patient, expecting to be paid as it had in the past, with notice that the sheriff would assume no responsibility. The Court is not persuaded that the sheriff should be responsible for Mr. Willard's costs under these circumstances.

In light of the reasons outlined above, the Court finds for the Defendant.